UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

LAVELL CONERLY,

        Petitioner,                                Case No. 1:13-cv-617

v.                                                Honorable Gordon J. Quist

MARY BERGHUIS,

        Respondent.

_____/

**REPORT AND RECOMMENDATION**

      This is a habeas corpus action brought by a state prisoner under 28 U.S.C. § 2254. When he filed his petition, Petitioner Lavell Conerly was incarcerated with the Michigan Department of Corrections at Muskegon Correctional Facility (MCF) in Muskegon, Michigan.[1] Respondent has filed an answer to the petition (ECF No. 34) stating that the grounds should be denied because they are meritless and/or procedurally defaulted. Upon review and applying the standards of the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. 104-132, 110 Stat. 1214 (AEDPA), I find that Petitioner is not entitled to relief because the grounds raised are meritless or are not cognizable. Accordingly, I recommend that the petition be denied.

**Discussion**

     **I.**     **Background**

        A. Trial

      In April 2010, Petitioner was charged with several offenses stemming from the robbery of Joseph Williams, a disabled schizophrenic, in Saginaw, Michigan. Williams was the

---

[1] He is currently incarcerated at Thumb Correctional Facility.

only witness to the robbery. At trial, he stated that he did not want to testify at the preliminary examination, but the court told him that he had to testify. (Tr. II, 71, ECF No. 15.) Williams claimed that he had been "attacked everywhere" because of his testimony. (*Id.*)

According to Williams, on April 15, 2010, he was walking home from the store after buying a pack of cigarettes when Petitioner pulled up in a truck. (*Id.* at 20, 29.) While inside the truck, Petitioner told Williams, "Joe, do I got to mess you --- F you up about my money?" (*Id.* at 29-30.) Williams could see that Petitioner had what appeared to be a shotgun in his lap, pointed toward the driver's side door. (*Id.* at 31-32.) Williams took his money out of his pocket, approximately $1,200, and Petitioner reached out the window, grabbed the money, and drove away. (*Id.* at 33-34, 44, 55.) Williams then ran home and called the police.

The police received Williams' call at 1:20 pm. (*Id.* at 87.) Later that afternoon, the police arrested Petitioner at his home. The police asked for consent to search Petitioner's house, but he refused. (*Id.* at 94.) The police subsequently obtained a warrant to search Petitioner's house. (*Id.*) After searching the house, police discovered two shotguns and several bags of ammunition. (*Id.* at 95-96; Tr. III, 20-21, ECF No. 16.) The police discovered Petitioner's fingerprints on one of the guns. (Tr. III, 77.) The police did not find any money in the house.

While Petitioner was in jail, he asked Detective Grigg what he was being charged with. Grigg told Petitioner that he would "take a hit on the guns." (Tr. II, 78.) According to Grigg, Petitioner hung his head and stated, "I know." (*Id.*)

On September 23, 2010, Petitioner's attorney approached one of the investigating officers, Detective Timothy Fink, and requested that Petitioner be interviewed. (Tr. III, 28.) Detective Fink conducted the interview with Petitioner's attorney present. (*Id.* at 29.) According to Fink, Petitioner acknowledged that he saw Williams while driving in his truck, and stopped to

2

talk to him. Petitioner also acknowledged that he spoke to Williams about a debt that Williams owed him. (*Id.* at 30.) Petitioner contended that he had sold Williams drugs and that Williams owed him $1,300.

A woman living in Petitioner's neighborhood testified that she saw Petitioner walking his dogs at around 11:35 am on April 15, 2010, and she spoke to him for about eight minutes when she was on her way home from work. (Tr. III, 99, 101.) Two other neighbors and Petitioner's girlfriend saw Petitioner walking his dogs at around 1:00 that day. (*Id.* at 109-11, 126, 138.) In addition, according to Petitioner's girlfriend, the driver's side window on Petitioner's truck could not roll down because it was broken. (*Id.* at 143.)

On November 5, 2010, a Saginaw County Circuit Court jury found Petitioner guilty of armed robbery, Mich. Comp. Laws § 750.529; felon in possession of a firearm, Mich. Comp. Laws § 750.224f; carrying a dangerous weapon with unlawful intent, Mich. Comp. Laws § 750.226; and three counts of carrying or possessing a firearm during the commission of a felony (felony-firearm), Mich. Comp. Laws § 750.227b. On December 13, 2010, the trial court sentenced Petitioner as a habitual offender, fourth offense, Mich. Comp. Laws § 769.12, to concurrent sentences of 46 to 180 months for the felon-in-possession conviction, 46 to 180 months for the carrying-a-dangerous-weapon conviction, and 180 to 300 months for the armed robbery conviction. All of these sentences were to be served consecutively to concurrent terms of 60 months for the three felony-firearm convictions.

After trial, Petitioner's appellate counsel received a letter from Petitioner's trial counsel, Philip Sturtz, indicating that Joseph Williams had come to Sturtz's office and given him a written statement retracting his trial testimony. (Letter, ECF No. 36-1, PageID.728.) The statement reads:

3

> I Joseph Williams was on the medication that Dr. Rao gave me and it clouded my judgement [sic] and Lavell Conely [sic] did not steal my money.  Now an innocent person is in prison and I want him out today.  I do not believe a man should be in prison for a crime he did not commit.  I would appreciate if the courts take this into consideration.

(App'x C to Appl. for Leave to App., ECF No. 21.)

Through counsel, Petitioner filed a motion for an evidentiary hearing and/or new trial based on the fact that Williams had purportedly recanted his testimony.  The court denied the motion because the statement by Williams was not notarized and because the court had observed Williams' trial testimony and did not believe that Williams had the mental capacity to fabricate the story that he told on the witness stand.  (8/8/2011 Hr'g Tr. 5-6, ECF No. 19.)

### B. Appellate Proceedings

Petitioner appealed his conviction to the Michigan Court of Appeals, raising the following issues in the brief filed by counsel:

I.  Where after trial complainant goes to the defense lawyer's office and states that his trial testimony was untrue due to prescription medication, an evidentiary hearing of complainant's testimony about these circumstances and a new trial are required.

II.  Where there is one primary witness in a robbery case, cross-examination is required as to the cause of that witness being on state disability.

III.  Where evidence was admitted at trial of (1) Defendant's refusal to consent to a search of his home; and (2) the judicial imprimatur authorizing the search warrant, the evidence was irrelevant, improper and prejudicial, a new trial is required.

IV.  Defense counsel's failure to make proper objections and record was constitutionally ineffective assistance of counsel.

(Br. on App., ECF No. 20.)

Petitioner also filed a supplemental brief *pro per*, raising the following issues:

> I. During closing arguments it was reversible error violating the defendant's state and federal constitutional right to have due process of law, for the prosecutor to use inculpatory statement made to police, as the statement was obtained without the benefit of Miranda warnings and in violation of his right against self-incrimination.
>
> II. Defendant was denied his state and federal constitutional right to have the assistance of counsel where trial counsel failed to object during the prosecutor's closing argument to the introduction of the defendant's inculpatory statement made to the police, as the statement was obtained without the benefit of Miranda warnings and in violation of his right against self-incrimination.
>
> III. Defendant was denied his state and federal constitutional right to have the assistance of counsel for his defense, where trial counsel failed to call at least eleven exculpatory witnesses to corroborate the defendant[']s central defense as the entire trial was a credibility contest.

(Def.-Appellant's Standard 4 Suppl. Br. on App., ECF No. 20.)

In an unpublished opinion issued January 24, 2012, the Michigan Court of Appeals affirmed the judgment of the trial court. *People v. Conerly*, No. 301804, 2012 WL 205831 (Mich. Ct. App. Jan 24, 2012).

Petitioner subsequently applied for leave to appeal to the Michigan Supreme Court, raising the following issues:

> I. Defendant was denied his state and federal constitutional right to have due process of law where the trial court abused it[s] discretion in denying defendant's motion for a new trial based on newly discovered evidence of complainant Joseph Williams recanted testimony, therefore at the very least he is entitled to an evidentiary hearing on the matter.
>
> II. Defendant's state and federal constitutional right to have due process was violated, where the prosecutor erroneously admitted his inculpatory statement to police that was obtained without the benefit of any Miranda warnings and in violation of his right against self-incrimination.
>
> III. Defendant was denied his state and federal constitutional right to have the effective assistance of counsel, where his trial counsel failed to object to several highly prejudicial error during defendant's trial and where counsel failed to call at least eleven exculpatory witnesses to corroborate his central defense, especially where the entire trial was a credibility contest.

    A. Trial Counsel's failure to object to the admission of Defendant's inculpatory statement obtained in violation of <u>Miranda</u> did not constitute sound trial strategy, as had Counsel made a timely objection, properly preserving the issue for appellate review, there is a reasonable probability the result of the proceeding would have been different.

    B. Trial Counsel's failure to object to the admission of Defendant's refusal to consent to search did not constitute sound trial strategy, as had counsel made a timely objection there is a reasonable probability the result of the proceeding would have been different.

    C. Trial counsel's failure to call at least eleven favorable witnesses, whose cumulative testimony corroborated Defendant's defense, did not constitute sound trial strategy especially where the trial was a credibility contest, and had it not been for Counsel's error there is a reasonable probability the result of the proceeding would have been different.

(Appl. for Leave to App., ECF No. 21.)

The Michigan Supreme Court denied leave to appeal on June 25, 2012, because it was "not persuaded that the questions presented should be reviewed" by that court. *People v. Conerly*, No. 144800, 815 N.W.2d 431 (Mich. 2012) (Mem. Order).

### C. Procedural History

Petitioner filed this action in August, 2013. The Court subsequently ordered him to file an amended petition on the form provided by the Court. Two months later, he filed his amended petition. (Am. Pet., ECF No. 3.) The magistrate judge recommended dismissing this action without prejudice because Petitioner failed to exhaust his remedies in state court for all of his claims. (R&R, ECF No. 24.) In response to the magistrate judge's recommendation, Petitioner asked to remove the unexhausted claims from his petition and to proceed with the exhausted claims. The Court granted this request, and ordered Respondent to answer the amended petition. (ECF No. 31.) Respondent has done so (ECF No. 34), and Petitioner has filed a reply (ECF No. 36).

6

After removal of the unexhausted claims from the amended petition (issues II and III),[2] Petitioner asserts the following grounds for relief:

> I. Where after trial complainant goes to the defense lawyer's office and states that his trial testimony was untrue due to prescription medication, is an evidentiary hearing of complainant's testimony about these circumstances and a new trial required?
>
> . . .
>
> IV. Was defense counsel's failure to make proper objections and record constitutionally ineffective assistance of counsel?
>
> V. [Petitioner] was denied his state and federal constitutional right to have due process of law, where the trial court abused it[]s discretion in denying [Petitioner's] motion for a new trial based on newly discovered evidence of complainant Joseph Williams recanted testimony, as [Petitioner's] entire trial was premised on complainants testimony, therefore, at the very least, he is entitled to an evidentiary hearing on the matter.
>
> VI. [Petitioner's] state[] and federal constitutional right to have due process of law was violated where the prosecutor erroneously admitted his inculpatory statement to police that was obtained without the benefit of any Miranda warnings and in violation of his right against self-incrimination.
>
> VII. [Petitioner] was denied his state and federal constitutional right to have the assistance of counsel, where trial counsel failed to call at least eleven exculpatory witnesses and, where counsel failed to corroborate his central defense, especially where his entire trial was a credibility contest?[3]

(Am. Pet., ECF No. 3, PageID.83-84.)

---

[2] The unexhausted claims are:

> II. Where there is one primary witness in a robbery case, is cross-examination required as to the cause of that witness being on state disability?
>
> III. Where evidence was admitted at trial of (1) Defendant's refusal to consent to a search of his home; and (2) the judicial imprimatur authorizing the search warrant, the evidence was irrelevant, improper and prejudicial, is a new trial required?

(Am. Pet., ECF No. 3, PageID.84.)

[3] Petitioner raised an eighth claim that is identical to issue VII. (*See* Am. Pet., ECF No. 3, PageID.83.) The two claims will be treated as one and the same.

## II. AEDPA standard

The AEDPA "prevents federal habeas 'retrials'" and ensures that state court convictions are given effect to the extent possible under the law. *Bell v. Cone*, 535 U.S. 685, 693-94 (2002). An application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d). This standard is "intentionally difficult to meet." *Woods v. Donald*, 135 S. Ct. 1372, 1376 (2015) (internal quotation omitted).

The AEDPA limits the source of law to cases decided by the United States Supreme Court. 28 U.S.C. § 2254(d). This Court may consider only the "clearly established" holdings, and not the dicta, of the Supreme Court. *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Bailey v. Mitchell*, 271 F.3d 652, 655 (6th Cir. 2001). In determining whether federal law is clearly established, the Court may not consider the decisions of lower federal courts. *Lopez v. Smith*, 135 S. Ct. 1, 3 (2014); *Bailey*, 271 F.3d at 655. Moreover, "clearly established Federal law" does not include decisions of the Supreme Court announced after the last adjudication of the merits in state court. *Greene v. Fisher*, 565 U.S. 34 (2011). Thus, the inquiry is limited to an examination of the legal landscape as it would have appeared to the Michigan state courts in light of Supreme Court precedent at the time of the state-court adjudication on the merits. *Miller v. Stovall*, 742 F.3d 642, 644 (6th Cir. 2014) (citing *Greene*, 565 U.S. at 38).

A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in the Supreme Court's cases, or if it decides a case differently than the Supreme Court has done on a set of materially indistinguishable facts. *Bell*, 535 U.S. at 694 (citing *Williams*, 529 U.S. at 405-06). "To satisfy this high bar, a habeas petitioner is required to 'show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Woods*, 135 S. Ct at 1376 (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)). In other words, "[w]here the precise contours of the right remain unclear, state courts enjoy broad discretion in their adjudication of a prisoner's claims." *White v. Woodall*, 572 U.S. ___, 134 S. Ct. 1697, 1705 (2014) (internal quotations omitted).

The AEDPA requires heightened respect for state factual findings. *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). A determination of a factual issue made by a state court is presumed to be correct, and the petitioner has the burden of rebutting the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003); *Bailey*, 271 F.3d at 656. This presumption of correctness is accorded to findings of state appellate courts, as well as the trial court. *See Sumner v. Mata*, 449 U.S. 539, 546 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989).

### III. Analysis

#### A. Habeas Issue I: Evidentiary hearing

Petitioner asserts that the trial court abused its discretion when failing to grant an evidentiary hearing and a new trial. The court of appeals determined that the trial court did not abuse its discretion, noting that it was Petitioner's burden to establish that he was entitled to such

9

a hearing, and Petitioner had merely provided an unnotarized letter. *Conerly*, 2012 WL 205831, at \*2 (citing *People v. McMillan*, 539 N.W.2d 553 (Mich. Ct. App. 1995)). Moreover, Michigan courts generally consider evidence of a witness recanting testimony to be "suspect and untrustworthy." *Id.*

Whether or not the trial court abused its discretion when denying the motion is not an issue that this Court can review because it concerns a matter of state law and procedure. "[A] federal court may issue the writ to a state prisoner 'only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.'" *Wilson v. Corcoran*, 562 U.S. 1, 5 (2010) (quoting 28 U.S.C. § 2254(a)). It is not the province of a federal habeas court to re-examine state-law determinations on state-law questions. *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005); *Estelle v. McGuire*, 502 U.S. 62, 68 (1991). "Because state courts are the final authority on state law . . . federal courts must accept a state court's interpretation of its statutes and its rules of practice." *Israfil v. Russell*, 276 F.3d 768, 771 (6th Cir. 2001). Michigan law and rules of procedure provide the standard for granting a motion for an evidentiary hearing or a new trial. This Court does not have authority to review the state court's application of that standard.

Moreover, as is the case in Michigan courts, in federal court, "'[r]ecanting affidavits and witnesses are viewed with extreme suspicion.'" *McCray v. Vasbinder*, 499 F.3d 568, 574 (6th Cir. 2007) (quoting *United States v. Chambers*, 944 F.2d 1253, 1264 (6th Cir. 1991)). "Even if accepted, a post-trial recantation is generally not sufficient to grant habeas relief absent constitutional error." *Bower v. Curtis*, 118 F. App'x 901, 908 (6th Cir. 2004). "The duty of federal habeas courts is to ensure that individuals are not unconstitutionally imprisoned; it is not to correct factual errors." *Id.* "'Claims of actual innocence based on newly discovered evidence have never been held to state a ground for federal habeas relief absent an independent constitutional violation

10

occurring in the underlying state criminal proceeding.'" *Id.* (quoting *Herrera v. Collins*, 506 U.S. 390, 400 (1993)). In other words, even if Williams recanted his trial testimony, Petitioner is not entitled to a hearing unless there is a possibility that he can demonstrate an independent constitutional violation. In the absence of a possible constitutional violation, an evidentiary hearing would serve no purpose. Actual innocence is not, by itself, sufficient to warrant habeas relief. *See Herrera*, 506 U.S. at 404 ("[A] claim of actual innocence is not itself a constitutional claim, but instead a gateway through which a habeas petitioner must pass to have his otherwise barred constitutional claim considered on the merits.").

Here, Petitioner asserts that the state court's failure to give him an evidentiary hearing denied him his right to due process. That claim is not cognizable in these proceedings, however, because a defect in post-conviction review does not undermine the validity of Petitioner's custody. "[T]he writ [of habeas corpus] is not the proper means by which prisoners should challenge errors or deficiencies in state post-conviction proceedings . . . because the claims address collateral matters and not the underlying state conviction giving rise to the prisoner's incarceration." *Kirby v. Dutton*, 794 F.2d 245, 246 (6th Cir. 1986); *see Sitto v. Block*, No. 00-10267-BC, 2006 WL 2559765, at *6 (E.D. Mich. Aug. 30, 2006) (rejecting claim that state court deprived the petitioner of due process when the court denied a motion for a new trial premised on newly discovered evidence), *aff'd Sitto v. Lafler*, 279 F. App'x 381 (6th Cir. 2008). Thus, Petitioner is not entitled to an evidentiary hearing to review Williams' retraction of his testimony because that retraction is not tied to, and does not give rise to, a cognizable claim. Therefore, habeas issue I is meritless.

B. Habeas Issue: IV: Ineffective Assistance of Counsel – Objections

Petitioner claims that counsel was ineffective for failing to make certain objections to evidence regarding: Petitioner's statement to the police about the gun charge, Petitioner's refusal to consent to the search of his house, and the existence of a judicially-approved warrant to search his house. The Michigan Court of Appeals reviewed and rejected these claims.

In *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984), the Supreme Court established a two-prong test by which to evaluate claims of ineffective assistance of counsel. The petitioner must prove: (1) that counsel's performance fell below an objective standard of reasonableness; and (2) that counsel's deficient performance prejudiced the defendant resulting in an unreliable or fundamentally unfair outcome. A court must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. Petitioner bears the burden of overcoming the presumption that the challenged action might be considered sound trial strategy. *Id.* (citing *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)). Counsel has "wide latitude . . . in making tactical decisions." *Id.* The Court must determine whether, in light of the circumstances as they existed at the time of counsel's actions, "the identified acts or omissions were outside the wide range of professionally competent assistance." *Id.* at 690. Even if a court determines that counsel's performance was outside that range, the defendant is not entitled to relief if counsel's error had no effect on the judgment. *Id.* at 691. Petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

Moreover, when a federal court reviews a state court's application of *Strickland* under § 2254(d), the deferential standard of *Strickland* is "doubly" deferential. *Harrington v.*

12

*Richter*, 562 U.S. 86, 105 (2011).  The question before the habeas court is "whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id.*

1. Petitioner's statement

Petitioner contends that counsel should have objected to the admission of his "inculpatory" statement to the police, and to the prosecutor's reference to this statement during the prosecutor's closing argument.  (*See* Def.-Appellant's Standard 4 Suppl. Br. on App. 7-8, ECF No. 20.)  As indicated *supra*, Detective Grigg testified that Petitioner asked him what Petitioner had been charged with.  Detective Grigg told Petitioner that he would "take a hit on the guns," and Petitioner responded, "I know."  (Tr. II, 78.)  In his closing argument, the prosecutor contended that "the defendant, by the statement he made, has admitted to being a felon in possession of a firearm and felony firearm[.]"  (Tr. IV, 16, ECF No. 17.)  Petitioner claims that his statement was admitted at trial in violation of his right against self-incrimination under the Fifth Amendment, as interpreted by *Miranda v. Arizona*, 384 U.S. 436 (1966), and that it was improper for the prosecutor to mention the statement.  Petitioner asserts that Detective Grigg improperly elicited Petitioner's statement by interrogating him without warning him of his right to remain silent, as required by *Miranda*.

The Michigan Court of Appeals rejected Petitioner's *Miranda* claim:

> If a defendant is subject to custodial interrogation, the police are required, as a procedural safeguard, to advise the defendant of his constitutional rights before questioning him. *Miranda v. Arizona*, 384 U.S. 436 (1966). Generally, the prosecutor cannot use a defendant's custodial statements as evidence unless these procedural safeguards are followed. *People v. Raper*, 222 Mich. App 475, 479; 563 NW2d 709 (1997).
>
> A custodial interrogation occurs when police officers initiate questioning after the defendant has been taken into custody or deprived of his freedom to act in a significant way. *Yarborough v. Alvarado*, 541 U.S. 652, 661 (2004). Custody is defined as whether a reasonable person in the defendant's position would not feel free to leave. *People v. Vaughn*, 291 Mich. App 183, 189; 804 NW2d 764 (2010).

> "Interrogation refers to express questioning and to any words or actions on the part of police that the police should know are reasonably likely to elicit an incriminating response from the subject." *Raper*, 222 Mich. App at 479. Voluntary statements made by a defendant in custody fall outside the scope of *Miranda* and are admissible. *Id.*
>
> . . .
>
> Defendant was clearly in custody, as he was being held at the jail. However, his statement was not made in response to a custodial interrogation. . . . The detective testified that he went to the holding area to take pictures of defendant. He also advised defendant that he would be meeting with the prosecutor to discuss the charges. In response, defendant inquired about the arresting charge and the detective said he would "take a hit" for the guns found in his home. At that point defendant volunteered: "I know." The record does not indicate that the detective questioned defendant or that he was trying to elicit an incriminating response. He was only informing defendant that he would probably be charged for having the guns in his house. This does not constitute an interrogation and there was no *Miranda* violation.
>
> Defendant also argues that the detective should not have questioned him because he had invoked his right to remain silent and to an attorney. However, as noted above, the detective's actions did not constitute further interrogation. Therefore, the detective did not violate *Miranda* by telling defendant what he would most likely be charged with after he supposedly invoked his right to an attorney.

*Conerly*, 2012 WL 205831, at *4-5.

Petitioner has not established that the state court made an unreasonable determination of the facts. Nor has he shown that the court unreasonably applied *Miranda* to the facts of his case. Detective Grigg made a statement to Petitioner, in response to Petitioner's question, and then Petitioner volunteered a response. As the state court determined, this was not a custodial interrogation; thus, *Miranda* does not apply. That being the case, Petitioner's counsel did not act unreasonably by failing to object to the evidence of this statement or to the prosecutor's closing argument. The prosecutor's argument was based on evidence properly before the jury. Any objection to the admission of this evidence or to the prosecutor's statement would have been fruitless. Petitioner cannot demonstrate objectively unreasonable conduct or prejudice where

counsel failed to make a meritless objection. Thus, the ineffective-assistance claim is without merit.

### 2.  Consent to search and search warrant

Petitioner also claims that his attorney should have objected to evidence that Petitioner refused to consent to the search of his home and that officers obtained a judicially-approved warrant to make the search. (*See* Br. on App.19-22, ECF No. 20.) Petitioner contends that this evidence was irrelevant and that it prejudiced his defense.

Reviewing for plain error Petitioner's claim that the trial court erred when it admitted this evidence, the court of appeals held that any prejudice was minimal:

> The fact that defendant refused to consent to a search of his home, even if not relevant, is not the type of evidence that is likely to be given undue or preemptive weight by the jury. The same is true for the process the police underwent to execute the warrant. Testimony regarding who typed the warrant and that the judge signed it is nothing more than a review of the formalities followed to obtain the search warrant that led to the police's discovery of the weapons in defendant's home. At most, this indicates that the police had probable cause to search defendant's home, but it was not unfairly prejudicial. Further, even if this evidence were prejudicial to some degree, that prejudice was minimal and clearly did not affect the outcome of the proceedings in light of the other evidence.

*Conerly*, 2012 WL 205831, at *3.

Reviewing Petitioner's claim that his counsel should have objected to the admission of this evidence, the court of appeals held that Petitioner failed to establish prejudice under the *Strickland* standard:

> As we already stated, the evidence concerning the search of defendant's home was—at most—minimally prejudicial and plainly did not affect the outcome. Hence, even if it could be said that the failure to object fell below an objective standard of reasonableness under prevailing professional norms, the error would not warrant relief.

*Conerly*, 2012 WL 205831, at *5 (citations omitted).

The state court's decision was not contrary to, or an unreasonable application of, *Strickland* or any other clearly established law. Thus, Petitioner's claim is meritless.

C.  Habeas Issue V: Due Process – Denial of Motion for New Trial

Petitioner argues that the state court deprived him of due process when it denied his motion for an evidentiary hearing. This claim is meritless for the reasons discussed in Section III.A, *supra*. In short, the state court's decision to deny his motion is not reviewable and his due-process claim is not cognizable.

D.  Habeas Issue VI: Due Process – Admission of Petitioner's Statement

Petitioner argues that the state court deprived him of due process when it admitted his statement to Detective Grigg. As discussed in Section III.B.1, *supra*, it was not improper for the state court to admit Petitioner's statement. The court of appeals properly determined that Petitioner did not make his statement in the context of a custodial interrogation; thus, *Miranda* does not apply.

E.  Habeas Issue VII: Ineffective Assistance of Counsel – Witnesses

Petitioner contends that his counsel provided ineffective assistance when he failed to call eleven witnesses who, according to Petitioner, could have attacked Williams' credibility or could have provided "exculpatory" testimony. (*See* Def.-Appellant's Standard 4 Suppl. Br. on App. 11, ECF No. 20.) Petitioner contends that he insisted on having his attorney present these witnesses, but his counsel refused to present them. In support of his argument, Petitioner offers several handwritten statements from various individuals, as well as a list of witnesses. The statements are signed but they are not notarized or sworn, and they discuss facts that have little bearing on Petitioner's guilt. They attest that Williams acted strange, harassed customers at a store, and asked for money to buy drugs. None of them mention any details that would undermine

Williams' credibility or the jury's finding of guilt. Petitioner asserts that other witnesses would have testified that Petitioner was in a different place at the time of the robbery, but Petitioner provides no further details or support for this assertion, other than his own, self-serving affidavit that he was in a different location, walking his dogs, at 1:20 pm on the afternoon of the offense.

The court of appeals examined the statements provided by Petitioner and concluded:

> All of these "affidavits" are unnotarized documents. Some appear to have the same handwriting, but with different signatures. There is no way to determine who actually wrote these documents and when. Given the suspect nature of these documents, we must conclude that defendant has not overcome the presumption that his lawyer's decision not to call these witnesses was anything other than sound trial strategy. *People v. LeBlanc*, 465 Mich. 575, 578; 640 NW2d 246 (2002).

*Conerly*, 2012 WL 205831, at *5. Applying the "doubly" deferential standard of review required by *Strickland* and § 2254, I conclude that Petitioner has not demonstrated any error in the state court's decision that warrants relief.

In summary, Petitioner has not established that he is entitled to any relief. His claims are either meritless or they are not cognizable in these proceedings. Accordingly, I recommend that his petition be denied.

## Certificate of Appealability

Unless a certificate of appealability is issued, an appeal of the denial of a habeas corpus petition may not be taken. 28 U.S.C. § 2253(c)(1). A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F.3d 466 (6th Cir. 2001). Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id.* at 467.

17

I have examined each of Petitioner's claims under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000). Under *Slack*, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In applying this standard, the Court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of Petitioner's claims. *Id.*

I find that reasonable jurists would not conclude that this Court's denial of Petitioner's claims is debatable or wrong.

### Recommended Disposition

For the foregoing reasons, I respectfully recommend that the habeas corpus petition be denied. I further recommend that a certificate of appealability be denied. *See Slack v. McDaniel*, 529 U.S. 473 (2000).

Dated:  December 11, 2017                    /s RAY KENT
                                             United States Magistrate Judge

### NOTICE TO PARTIES

Any objections to this Report and Recommendation must be filed and served within 14 days of service of this notice on you. 28 U.S.C. § 636(b)(1)(c); Fed. R. Civ. P. 72(b). All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to file timely objections may constitute a waiver of any further right of appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).